UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| RUBEN MICHAEL CAVASOS, #325843, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:05-cv-635 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| HARALD GILKY, et al., ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| _____ ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §1983. Plaintiff is an inmate at the Standish Maximum Correctional Facility located in Standish, Michigan. On September 19, 2005, plaintiff filed his complaint naming 20 state employees at the Ionia Maximum Correctional Facility ("ICF") as defendants:

(1) Resident Unit Manager Harald Gilkey;[1]
(2) Warden Willie O. Smith;
(3) Assistant Deputy Warden Erica Huss;
(4) Deputy Warden Nanette Norwood;
(5) Sergeant Beverly Scott;
(6) Lieutenant McCoy;
(7) Unknown Thomas;
(8) Captain Kruger;
(9) Lieutenant Wakeley;
(10) Sergeant Christiansen;
(11) Sergeant Griffin;
(12) Captain Miller;
(13) Lieutenant Cannon;
(14) Sergeant Yates;
(15) Sergeant Wenzel;

___

[1]Plaintiff's complaint misspelled the names of defendants Gilkey, Wakeley, Cannon, Grubaugh, and Stoddart as "Gilky, Wakely, Canyon, Grubough, and Stroddard."

  (16) Registered Nurse Grubaugh;
  (17) Registered Nurse B. Kemp;
  (18) Registered Nurse S. Wright;
  (19) Registered Nurse Ringo; and
  (20) Registered Nurse Stoddart.

(Complaint, 4(A)-4(B), docket # 1). Plaintiff's complaint alleges that various actions taken by defendants in response to plaintiff's repeated suicide attempts constituted deliberate indifference to serious medical needs or excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. Plaintiff seeks an award of monetary damages against defendants in their individual capacities.

  On January 27, 2006, the seventeen defendants served in this lawsuit filed a motion for summary judgment. (docket # 33). On January 30, 2006, the court issued an order advising plaintiff of his opportunity to oppose defendants' motion. (docket # 36). Plaintiff did not file a brief, affidavits, documents, other materials in opposition to defendants' motion for summary judgment, and the time period for filing such materials has long-since expired.[2] For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's claims.

  Defendants Thomas, Kruger, and Wright have never been served or otherwise appeared in this action. Because the summons expired in February 2006 without service having been achieved, I recommend that all plaintiff's claims against defendants Thomas, Kruger, and Wright be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. *See*

---

[2]Plaintiff filed a motion on March 2, 2006, asking the court to deny defendants' motion or delay its decision. (docket # 38). On March 21, 2006, the court entered an order denying plaintiff's motion. (docket # 43).

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005).

### **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's

case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005).

Although plaintiff elected not to file a response to defendants' motion for summary judgment, the court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000). Rather, the court is required to examine the movants' summary judgment motion to ensure that the they have discharged their initial burden.

**Facts**

The following facts are beyond genuine issue. In September of 2004, plaintiff was an inmate at the Ionia Maximum Correctional Facility ("ICF"). At approximately 5:00 p.m. on September 11, 2004, plaintiff attempted to commit suicide by taking a razor and cutting his left biceps numerous times and inserting a metal rod under the skin of his left forearm. Shanon Wright, R.N., attempted to slow plaintiff's profuse bleeding with a pressure dressing. She told custody officers to contact emergency healthcare providers. Plaintiff was transported by ambulance to Ionia County Memorial Hospital, where the foreign object was removed from plaintiff's forearm and doctors treated and bandaged his severely injured left arm. After several hours of hospital treatment, plaintiff was transported back to ICF. (9/11/04 medical records, Ex. K).

Plaintiff arrived back at ICF at approximately 10:00 p.m. Before being reintroduced into ICF's maximum security prison's population, plaintiff was required to undergo a routine strip search. Plaintiff was placed in a shower module and his restraints were removed to facilitate the search. Plaintiff immediately produced a razor that he had concealed. Lieutenant Jacque Cannon gave plaintiff an order to relinquish the razor. Plaintiff did not comply. Instead, plaintiff removed the bandage from his injured left arm and began cutting it anew with the razor. Lieutenant Cannon instructed guards to put on protective gear, because Cannon anticipated that it would be necessary to use force to take the razor from plaintiff. Plaintiff apparently overheard Cannon's instruction and he dropped the razor outside of the shower module. Guards applied restraints and removed plaintiff from the shower module. Beth Willis, R.N. contacted Dr. Angel, the emergency room physician who had treated plaintiff at Ionia County Memorial Hospital. Dr. Angel advised Nurse Willis that plaintiff had numerous lacerations on his left arm. The lacerations had been treated at the hospital

with Gel-foam and pressure dressings to stop the bleeding.  At cell-side Nurse Willis examined plaintiff's newly inflicted damage to his left arm.  Nurse Willis cleaned and dressed the wounded area.  Lieutenant Cannon inquired of Nurse Willis whether plaintiff's new injuries required another trip to Ionia County Memorial Hospital.  Nurse Willis advised Cannon that plaintiff's new injuries did not require hospital treatment.  Deputy Norwood authorized application of top- of-bed restraints to save plaintiff from further injuries and placed him on one-on-one close observation status.  Nurse Willis observed that even when plaintiff was restrained and could not disturb the bandages with his hands, plaintiff began tearing at the bandages with his teeth.  Nurse Willis told plaintiff to leave the dressing alone.  Plaintiff responded by stating, "F--- you bitch." (9/11/04 medical records, Ex. K; Cannon Aff. ¶¶ 1-7, Ex. A; Initial Application of Restraints, Ex. A(4)).

The next morning, September 12, 2004, at approximately 8:05 a.m. Nurse Grubaugh examined plaintiff.  Progress notes showed that during the night a nurse had redressed plaintiff's left arm wound after plaintiff had pulled off the dressing with his teeth.  Nurse Grubaugh inspected the wound, cleaned it, and applied a new dressing.  Plaintiff was able to move all his extremities.  Plaintiff claimed that he had swallowed a razor during the night. The guard assigned to the one-on-one observation duty did not witness plaintiff swallowing a razor.  Nurse Grubaugh found no physical evidence suggesting that plaintiff had actually swallowed a razor.  Plaintiff was able to speak clearly and his respirations were even and unlabored.  Nurse Grubaugh contacted Dr. Schuster at Duane Waters Hospital and advised him of the situation.  Dr. Schuster did not believe it was necessary to have plaintiff transported back to the hospital on the basis of plaintiff's unsubstantiated statement that he had swallowed a razor.  (9/12/04 medical records, Ex. K).

At approximately 11 a.m. on September 12, 2004, health care services and Sergeant Roger McCoy were contacted. Despite the top of bed restraints and the close observation status, plaintiff found a way to impose new self-inflicted wounds. Plaintiff apparently used a paper clip to cut his right leg. Lieutenant McCoy, Nurse Grubaugh, and Psychologist Butler proceeded to plaintiff's cell. Plaintiff told Nurse Grubaugh that he had inserted the metal into his right upper thigh and into his penis. Nurse Grubaugh observed a laceration approximately 3 1/2 inches in length on plaintiff's right upper thigh and a small amount of blood surrounding the thigh laceration. Grubaugh cleaned the laceration and applied a pressure dressing. Deputy Warden Norwood authorized placing plaintiff in hand restrictive top of bed restraints in accordance with Psychologist Butler's recommendations. Butler recommended additional restrictions of "no property, no sharps, finger foods and underwear only" as additional suicide prevention measures. Nurse Grubaugh contacted Dr. Schuster. At the conclusion of her telephone conversation with Dr. Schuster, Nurse Brubaugh recommended that plaintiff be transported to Ionia County Memorial Hospital. Within minutes Deputy Warden Norwood authorized that plaintiff be taken to the hospital for evaluation and treatment. Plaintiff was escorted from his cell to the high security shower module where he was strip-searched and prepared for transport. At 11:13 a.m. plaintiff was escorted to the prison's intake area and from there was transported to the hospital. At Approximately 11:20 p.m. the control center guards were advised that plaintiff had been admitted to Ionia County Memorial Hospital. (9/12/04 medical records, Ex. K; McCoy Aff. ¶¶ 1-13, Ex. B).

On September 14, 2004, plaintiff was discharged from Ionia County Memorial Hospital. The hospital's discharge summary written by Steven Olchowski, M.D., stated verbatim as follows:

> **DISCHARGE DIAGNOSIS:**
> Self-inflicted wounds to the right thigh, left upper arm and foreign body insertion in the umbilicus.
>
> **PROCEDURE WHILE IN THE HOSPITAL:**
> Closure of laceration right thigh. Removal of foreign body of the umbilicus. Cleaning and dressing multiple lacerations of the left arm.
>
> **BRIEF SUMMARY:**
> This 23 year old who came to the hospital on 09-11-03 and Dr. Angel took care of a foreign body laceration to the arm. He came back with another laceration of the thigh and a foreign body in the belly button. I closed the thigh incision, admitted him for observation after removing the foreign body of the umbilicus.
>
> He had no peritoneal irritation in the 36 hours of observation. He said that he ate a piece of broken glass from a mirror and x-ray did not reveal any foreign body. He was sent back to prison to be 4 point restraints to watch him carefully for further self inflicted wound activities. Sutures to be removed in ten days. Follow-up as needed.

(9/14/04 medical records, Ex. K).

On September 14, 2004, in accordance with medical instructions, Warden Willie O. Smith authorized the application of hand restrictive top of bed restraints to save plaintiff from further self-inflicted injuries and to provide plaintiff's existing injuries with an opportunity to heal. (9/14/04 Initial Application of Restraints, Ex. B(3)). Prisoners held in top-of-bed restraints are checked twice a shift by supervisory personnel and at that time, if awake, they are offered a break. Furthermore, anytime during the shift a prisoner can request a break by telling the unit officer. The officer will then contact a supervisor and the break will be provided. (Wenzel Aff. ¶ 3, Ex. E; Restraints Checklist, Ex. J; Unit Log, Ex. I).

Joann Stoddart, R.N., examined plaintiff on September 14, 2004. Nurse Stoddart observed that all of plaintiff's extremities retained mobility. She observed that the dressing on

plaintiff's left arm remained in place. When asked, plaintiff stated that he did not require health care assistance. (9/14/04 medical records, Ex. K).

On September 15, 2004, at approximately 9:00 a.m. Betty Kemp, R.N., examined plaintiff. Nurse Kemp removed the bandages and accessed plaintiff's lacerations. Nurse Kemp observed no signs or symptoms of infection. Nurse Kemp found that plaintiff's left upper arm had multiple lacerations that crisscrossed with a moderate amount of drainage. She cleaned and applied a new dressing. She found that plaintiff was able to move all his extremities within normal limits. Plaintiff ate breakfast and offered no complaints. Psychologist R. Raymond interviewed plaintiff. Philip Rengo, R.N., administered medication. (9/15/04 medical records, Ex. K; Kemp Aff. ¶¶ 1-5, Ex. G; Gilkey Aff. ¶¶ 1-7, Ex. D; Rengo Aff. ¶ 4, Ex. H; Restraint Checklist, Ex. J; Unit Log, Ex. I ).

Sergeant John Christiansen was only assigned to plaintiff's housing unit once during the relevant time period. On September 15, 2004, at 6:03 p.m. plaintiff received a bathroom and water break. This type of break entailed removing the restraints and allowing the prisoner to walk to the toilet in his cell. After plaintiff took this restroom and water break the restraints were reapplied. Sergeant Christiansen checked the restraints to ensure proper fit and that they did not restrict blood flow. (Christiansen Aff. ¶¶ 1-6, Ex. C; Restraint Checklist, Ex. J; Unit Log, Ex. I).

On September 16, 2004, Nurse Kemp examined plaintiff. Plaintiff complained to Nurse Kemp that the restraint on his left hand was too tight. Plaintiff was observed pulling against the restraints and Nurse Kemp noted a slight indentation and swelling on plaintiff's left wrist. Nurse Kemp asked the custody officers to loosen the restraint. The custody officers loosened the restraint as requested. Nurse Kemp found that plaintiff's upper right thigh laceration was dry. She found no

signs of infection. Plaintiff's upper left arm laceration was dry and scabbed, with the exception of a few small areas that remained open and had yellowish drainage. She observed no redness or swelling. Nurse Kemp cleaned the area, applied antibiotic ointment, and covered the area with a new bandage. Plaintiff accepted all his medications. Plaintiff did not offer any complaints. (9/16/04 medical records, Ex. K; Kemp Aff. ¶¶ 6-10, Ex. G; Restraint Checklist, Ex. J; Unit Log, Ex. I).

Nurse Kemp examined plaintiff on September 17, 2004. Plaintiff was in top-of-bed restraints, but the restraints had not prevented plaintiff from removing some of his sutures. Nurse Kemp removed the dressing from plaintiff's left upper arm. She cleaned and covered the wounded area. She observed no swelling or redness. Plaintiff's thigh laceration had healed. Plaintiff was able to move all his extremities within normal limits. Plaintiff accepted the medications and glass of water provided by Nurse Kemp, and did not voice any complaints. (9/17/04 medical records, Ex. K; Kemp Aff. ¶ 11, Ex. G; Restraint Checklist, Ex. J; Unit Log, Ex. I)

On September 18, 2004, at 8:30 a.m. Nurse Rengo examined plaintiff. Nurse Rengo found that plaintiff's restraints fit appropriately. Plaintiff advised Nurse Rengo that he had removed the protective dressing on his left arm and that he did not want the dressing replaced. Rengo found that the area was dry, without redness, swelling or discharge. Rengo advised plaintiff that his wound was more likely to become infected if it was left open and that he was taking an unnecessary risk by leaving it open. Plaintiff accepted the medications provided by Nurse Rengo, but refused to allow a new dressing to be applied. (9/18/04 medical records, Ex. K; Rengo Aff. ¶¶ 1-5, Ex. H; Restraint Checklist, Ex. J; Unit Log, Ex. I ).

Plaintiff was examined by Nurse Grubaugh on September 19, 20 and 21, 2004. She checked plaintiff's restraints and found that the movement of plaintiff's hands and feet were

satisfactory. She offered medication which plaintiff accepted on some occasions and rejected on others. The progress notes recorded the gradual process of plaintiff's wounds healing. (9/19/04 to 9/21/04 medical records, Ex. K; Restraint Checklist, Ex. J; Unit Log, Ex. I). Deputy Warden Norwood authorized the removal of plaintiff's restraints at approximately 11 a.m. on September 21, 2004. (Restraint Checklist, Ex. J; Unit Log, Ex. I).

## Discussion

**1.      Deliberate Indifference**

Plaintiff's complaint alleges that defendants were deliberately indifferent to his serious medical needs in violation of plaintiff's Eighth Amendment rights under the Cruel and Unusual Punishments Clause. The authority controlling prisoner medical treatment claims is *Estelle v. Gamble*, 429 U.S. 97 (1976). In that case, the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976); *see Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must

establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the either component of his claims against the defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 389 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff's medical records demonstrate that he had serious medical needs during the relevant time period. However, the mere presence of a serious medical is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). Plaintiff has not presented evidence that any defendant caused an objectively serious deprivation. *See Clark-Murphy v. Foreback*, 439

F.3d 280, 286 (6th Cir. 2006); *Jarriett v. Wilson*, 162 F. App'x 394, 402-03 (6th Cir. 2005). No reasonable trier of fact could find in plaintiff's favor on the objective component of an Eighth Amendment claim against any defendant based on the evidence before the court.

The second prong under Estelle requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's recent decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the requirements of the subjective component of a deliberate indifference claim:

> The subjective component, by contrast, requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care." [*Blackmore*, 390 F.3d at 895] (quoting *Farmer,* 511 U.S. at 834, 114 S. Ct. 1970). Deliberate indifference requires a degree of culpability greater than mere negligence, but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835, 114 S. Ct. 1970. The prison official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838, 114 S. Ct. 1970.

*Miller*, 408 F.3d at 813. Plaintiff has not identified and supported with evidence any excessive risk to his health or safety disregarded by the defendants. Plaintiff was twice hospitalized. Even when he was restrained, plaintiff found new ways to injure himself. If defendants had not ordered that plaintiff be restrained during this time period, the defendants would have risked having that conduct classified in hindsight as deliberate indifference, particularly if plaintiff had been successful in taking

his own life. *See Schultz v. Stillman*, 148 F. App'x 396, 401 (6th Cir. 2005)("Because suicide is a difficult event to predict, this Court inquires 'whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's medical needs.'")(quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)). In *Stillman*, a Sixth Circuit panel found that a corrections officer could be deliberately indifferent in failure to take adequate suicide prevention measures even in the absence of evidence directly showing that the deceased inmate's pre-suicide behavior was "self-injurious." 148 F. App'x at 402; *see also Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999)(finding that although extended periods in restraints without freshwater and bathroom breaks were harsh, they did not violate Eighth Amendment standards, and that the defendants were entitled to summary judgment where the plaintiff failed to submit evidence beyond the allegations of his complaint). Although plaintiff alleged inadequacies in the breaks he was permitted from his restraints in order to use the bathroom, eat, or drink, plaintiff presented no evidence supporting these claims. Plaintiff either received breaks or refused the breaks that were offered. Every time plaintiff injured himself he received immediate medical treatment. Plaintiff was repeatedly transported outside the prison to an area hospital for extensive medical treatment. Plaintiff spent nearly two full days outside ICF at the hospital as a precautionary medical measure. There is no evidence on which a reasonable jury could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against any defendant.

**2.      Excessive Force**

Plaintiff's closely related excessive force claim requires little discussion. Plaintiff's complaint alleges that the restraints applied at ICF after his second hospitalization for attempted suicide constituted excessive force in violation of his Eighth Amendment rights. In order to establish an excessive use of force, plaintiff must satisfy both the objective and subjective tests under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. at 297-300. Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, "the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether the force was applied in a good-faith effort to restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, efforts made to temper the severity of a forceful response and the absence of any serious injury. 503 U.S. at 7. Maximum-security prisoners are not usually the most gentle and tractable of men. *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Here, before top-of-bed, hard, hand restrictive restraints were applied, plaintiff had twice sliced open his arm with a razor and had inserted a foreign metal object into his forearm. While restrained after the first suicide attempt, plaintiff had managed to puncture his thigh and embed what appeared to have been a paper clip into his navel. Plaintiff also claimed to have swallowed a razor blade and broken glass. Physicians' instructions upon discharge from the second hospitalization recommended that plaintiff be restrained to prevent him from successfully committing suicide or inflicting new injuries, and to provide plaintiff's serious existing wounds with an opportunity to heal.

When plaintiff was placed in hand restrictive restraints plaintiff still managed to use his teeth to remove bandages and sutures. It is against this backdrop that the defendants' use of force in the form of physical restraints must be evaluated. No reasonable trier of fact could find that defendants' actions were "wanton" -- malicious and sadistic and for the very purpose of causing harm. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Whitley*, 475 U.S. at 320-21; *Hartsfield v. Vidor*, 199 F.3d at 309-10; *see also Kennedy v. Doyle*, 37 F. App'x 755 (6th Cir. 2002)(affirming district court's grant of summary judgment in favor of defendants because the application of top of bed restraints in response to incorrigible inmate behavior did not constitute excessive force in violation of Eighth Amendment standards and did not violate the inmate's rights under the Due Process Clause). No reasonable trier of fact could find in plaintiff's favor against any defendant on plaintiff's excessive force claim.

### 3.     **Qualified Immunity**

Alternatively, defendants seek judgment in their favor on the basis of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fisher v. Harden*, 398 F.3d 837, 841 (6th Cir.), *cert. denied*, 126 S. Ct. 828 (2005); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence[3] facts showing that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006)("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n.5 (6th Cir. 2005)("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive."). Plaintiff did not satisfy the threshold constitutional violation requirement for the reasons previously stated.

Assuming *arguendo* that plaintiff had satisfied the initial requirement, plaintiff would nonetheless fall short of showing that the right plaintiff claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right. 533 U.S. at 201. The Supreme Court's recent decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004) examined the underlying purpose of the requiring that the law be clearly established:

---

[3]The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316. "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005)(quoting *Brosseau*, 543 U.S. at 199). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). Although is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[4] in light of pre-existing law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*,

---

[4] "Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

273 F.3d at 569. "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (6th Cir. 2006)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

      Plaintiff made repeated suicide attempts. He managed to invent new ways to injure himself despite significant efforts by defendants to curb plaintiff's self-destructive behavior. Plaintiff received immediate and extensive medical treatment. Plaintiff has not identified any remotely analogous case where actions similar to those taken by defendants constituted a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. I find that defendants are entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

**Recommended Disposition**

For the reasons set forth herein, I recommend that defendants' motion for summary judgment (docket # 33) be granted, and that judgment be entered in favor of the moving defendants' on all plaintiff's claims.  I further recommend that plaintiff's claims against defendants Thomas, Kruger, and Wright be dismissed without prejudice because plaintiff failed to achieve service on these defendants within the life of the summons.


Dated:   April 27, 2006                    /s/  Joseph G. Scoville
                                           United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).